**FEDERAL DEPOSIT INSURANCE CORPORATION, In Its Corporate Capacity as Liquidator of Travis Bank and Trust, Plaintiff,**

v.

**James D. SCHWARZER and Rita J. Schwarzer, Defendants.**

**Civ. No. A–92–CA–435.**

United States District Court, W.D. Texas, Austin Division.

Dec. 14, 1992.

Roy G. Morris, Steven Alex DeMonbreum, Norbert T. Starr, II, F.D.I.C. Legal Div., Dallas, TX, for plaintiff.

Michael G. Lockwood, Kiester & Lockwood, Austin, TX, for defendants.

## MEMORANDUM OPINION AND ORDER

SPARKS, District Judge.

BE IT REMEMBERED on the 4th day of December, 1992, a judicial valuation hearing in the above-styled and numbered cause took place before the Court pursuant to Section 51.003 of the Texas Property Code, and the Court has determined the fair market value of the subject property as of the date of foreclosure to be $77,500.00. *See* Tex.Prop.Code Ann. § 51.003 (West Supp. 1992).

Section 51.003, which to this Court's knowledge has not yet been applied by any court, allows a debtor to challenge the foreclosure sale price by requesting a judicial determination of fair market value in the event a deficiency action is filed against the debtor by the creditor.[1] *Id.* The statute applies only to those actions in which the foreclosure sale occurred on or after April

1, 1991. Prior to that date, a debtor could only challenge a price obtained at a foreclosure sale as inadequate if there was also some irregularity, such as failure to give notice, which caused the sale to be invalid. *See e.g., FDIC v. Myers,* 955 F.2d 348, 350–51 (5th Cir.1992) (mentions Section 51.003); *Resolution Trust Corp. v. Westridge Court Jt. Venture,* 815 S.W.2d 327, 330–31 (Tex.App.—Houston [1st Dist.] 1991, writ denied) (mentions Section 51.003).

### I. *Facts*

On or about September 21, 1984, Defendants executed a promissory note in the original principal sum of $230,000.00 payable to Travis Bank and Trust ("the Note") and secured by a deed of trust ("the Deed of Trust") on three tracts of undeveloped land in Williamson County, Texas owned by Defendants. The Note was subsequently renewed and extended by agreement dated April 29, 1988. Defendants thereafter allegedly defaulted on the Note and, on April 20, 1989, Travis Bank and Trust was declared insolvent and the FDIC became the holder of the Note and beneficiary of the Deed of Trust.

On July 2, 1991, the property was sold for $65,900.00 at a nonjudicial foreclosure to the highest bidder, the FDIC, pursuant to the terms of the Deed of Trust. About a year later, on June 11, 1992, the FDIC sold the three tracts to a buyer for $59,000.00, without conducting a planned seal bid but after listing the property in a FDIC brochure which was circulated to several thousand brokers without any response.

Prior to selling the property at the July 2, 1991, foreclosure sale, the FDIC considered several appraisals and estimates by the Defendants concerning the value of the property subject to the Deed of Trust. Those estimated values were as follows:

(1) March 7, 1990: $140,000.00—appraisal by Mary L. Turner.

(2) May 31, 1991: $50,000.00—Defendants' Financial Statement submitted

---

1. Section 51.003 reads, in part:
Any person against whom such a recovery [for a deficiency] is sought by motion may request that the court in which the action is pending determine the fair market value of the real property as of the date of the foreclosure sale.
Tex.Prop.Code § 51.003(b).

to the FDIC. In notes attached to the statement, the Schwarzers stated that "[t]he market value of this property was recently researched by an Austin area realtor and the price reflects what the property might sell for in today's market." *Plaintiff's Exhibit* # 3.

(3) June 8, 1991: $35,880.00—Defendant Rita Schwarzer's letter to the FDIC stating that none of the realtors she had contacted in the Austin area thought a buyer would "pay much more than the value shown on the tax rolls—$35,880.00!!" *Plaintiff's Exhibit* # 4 (emphasis in original).

(4) March 22, 1991: $48,600.00 if sold as a three lot package and $77,500.00 if the three tracts were sold separately: appraisal by Tom Wiley based on assumption that property would be sold within sixty to ninety days.

Based on these figures, and primarily Tom Wiley's appraisal that the property was worth $77,500.00 if sold separately, the FDIC determined that $69,500.00 was a fair and reasonable bidding price, accounting for the costs of sale, holding the property, and so on.[2]

Because $69,500.00 is far less than what Defendants owed on the Note, the FDIC filed an action for recovery of the deficiency in the amount of $111,251.15 on March 9, 1992. At the behest of the Defendants, Byron B. Hinton appraised the three tracts and issued an appraisal on September 28, 1992, concluding that as of July 2, 1991, the date of the foreclosure sale, the property was worth $153,000.00. A little over a week after receiving Mr. Hinton's appraisal, Defendants filed a motion for judicial valuation of the property pursuant to Section 51.003.

## II. *Judicial Valuation*

Having listened to the evidence presented at the December 4, 1992 hearing and the arguments of counsel, as well as having examined exhibits admitted at that hearing, including the appraisals of Tom Wiley and Byron Hinton,[3] the Court concludes that the fair market value of the three tracts subject to the Note, as of July 2, 1991, was $77,500.00.

The Court found Mr. Hinton's testimony that the three tracts in Williamson County could be sold in twelve to eighteen months for $153,000.00, to be held for development of an office or multifamily use, unrealistic given the location of the property (20–30 minutes from Austin off of Highway 183 during non-rush hour times of the day); the fact that the land may be within the habitat of two endangered species;[4] the real estate market in Austin, Texas; and the fact that Defendants tried, unsuccessfully, to sell the property for over three years.

As for Mr. Wiley's testimony that the fair market value of the property, if each tract were sold separately, was $77,500.00 as of July 2, 1991, the Court found this to be credible and consistent with the Defendants' representations in May and June of 1991. This conclusion by the Court is not altered by the fact that Mr. Wiley based his March, 1991 appraisal on a sale time of sixty to ninety days compared with the nine to eighteen month standard generally used by appraisers. Given the Schwarzers' representations concerning the value of their property (made after they consulted with local realtors) and given their inability to sell the property long after eighteen months had passed, the Court is convinced that, as Mr. Wiley testified, the fair market value of the property on July 2, 1991 would not be significantly different than the value determined by Mr. Wiley in his March, 1991

2. Interestingly, the average of the five figures considered by the FDIC is $70,396, less than the $77,500 figure they used and then adjusted for their costs incurred.

3. Tom Wiley and Byron Hinton were the only witnesses who testified as to the fair market value of the subject property at the December 4, 1992 valuation hearing.

4. Even if the property is later determined to not be within the habitat of either the Golden–Cheeked Warbler or the Karst, until such time as that determination is positively made, purchasers will certainly be wary and unlikely to pay a high price based on the assumption that the property will be able to be used for commercial purposes or for multifamily housing.

appraisal even if the standard exposure time had been used.

### III. *Conclusion*

Therefore, the Court finds from the preponderance of the evidence and ORDERS that the fair market value of the three tracts of undeveloped land, located in Williamson County and subject to the Note reflecting Defendants' indebtedness to the Plaintiff FDIC, is $77,500.00.

IT IS FURTHER ORDERED that the deficiency amount sought by the FDIC in this action shall be further offset by $8000.00, the difference between the fair market value of $77,500.00 and the price for with the property was sold, $69,500.00, in accordance with Section 51.003 of the Texas Property Code. Thus, Plaintiff FDIC's requested damages under the Note are reduced from $111,251.15 to $103,-251.15.